Judge Maesiiall
delivered the opinion of the Court.
This case was formerly before the Court, and we refer to the opinion reported in 9th B. Monroe, 511, fora .general statement of the facts and principles as then presented. It will be seen from that opinion that the actioii was brought on the demise of Trimble, against Richard Ratcliff, Silas Ratcliff, and others, to recover land claims •ed by the lessor under a sheriff’s sale and deed, made in virtue of a judgment and execution against Silas Ratcliff, that th'e defendants relied upon a prior deed from S. Ratcliff to his son Richard, and that the principal question in the case, was, whether this deed wás or was not fraudulent and void as against the creditor's of S. Ratcliff. This upoii the last trial was the only question, so far as the inerits were concerned, and is the subject of the instructions given and refused. Several incidental’questibns were however, made in the progress of the trial, some of which it is necessary to notice.
The plaintiff in making out his title offered the reced’d of the judgment and proceedings of the Floyd Circuit Court, under which the lessor had purchased the land; aud received his deed; which was objected to on the ground that it was certified by the lessor himself as Clerk of that Court. But it was admitted as evidence. And it is now contended that this was erroneous, as being in violation of the rule, that a man shall not make evidence for himself. It is not shown, however, that such a case has ever been decided to be subject to the application of the rule, and we are satisfied that it is ‘not. The official character of the act, the duty and *33 responsibilities of the Clerk, the publicity and notoriety of the proceedings appearing of record and certified by him, the penal consequences of a false certificate, and facility of detection and exposure, are considerations ■which preclude the application of the rule to a record certified by him-, and it may be used as evidence by him as well as by any other person.
A defendant in ejectment tenant in possession be ing shown (ó have been in pos session on the 2d day of the month, tjie jury may where there is ho evidence to the contrary presume ti\at his possession w.as continued'' until the 14th o.f the same month;
When the plaintiff had made out his chain of title, and proved that the defendants were in possession on the ‘id of February, 1844, the declaration and notice in the action having been served on them on the 14th of the same month ; the defendants moved for instructions as in case of a non-suit, and the motion having been overruled, if is now contended that it should have been granted on two grounds-. 1st, because there was no proof of possession by the defendants when the declaration was served; and 2d, because the sheriff’s deed was not indented as required by the act bf 1798; {Stab. Law-, 1463.) The record does not show the specific grounds on which the motion was made. But we db not consider either of those now urged as sufficient; As to the first, the jury had a right to infer, in the absence of other evidence, that the defendants being in possession on the 2d of February, remained in possess sion until the 14th. From the nature of the fact the presumption of continuance (to a reasonable extent,) arises, rather than the presumption of abandonment or cessation of the possession. And besides the inference of a continued possession is amply authorized, if not ins deed fully established, by the evidence subsequently ins troduced.
As to the second ground, it might be sufficient to say that there is no evidence'in the record that the deed was not indented-. It was read without objection. Upon its face it is called an Indenture. It appears in the' transcript before us, just as we presume it would appear if it were actually indented. And its not being indent-' ed is not even alleged in the motion for a hon-suit. Under these circumstances, we should, if.it were-neces *34 sary to sustain the judgment, presume that it was indented. But unless for want of being indented, it was absolutely void, it was too late after admitting it as evidence without objection, to move for a non-suit because it was not indented. If it was not void, it passed the title of the defendant in the execution, and being in evidence, it proved that title to be in the lessor, which was its proper office. But we think the objection would be unavailing in-any form, and at any stage of the cause.
It is no objection to the admissibility of Sheriffs or other deed of conveyance at this day that it is not indented. The practice of indenting for i-dentificntion is now obsolete in Kentucky.
The practice of separating the different parts, or copies, of a deed or indenture by cutting them apart in an indented or curved line, so that the identity and genuineness of the parts in the hands of the grantor and grantee, might at any time be tested by bringing them together, and thus determining whether they had been written on the same piece of paper or parchment, was formerly useful and necessary to prevent imposition, and to test the verity of the instrument. It was therefore regarded as essential in important transactions, and is prescribed by the old statutes regulating the modes of conveying land. But this from having long since ceased to be necessary or useful, has been dropped in general practice, and was omitted in the general statutes of conveyancing, as early as 1785; and it has become wholly obsolete in this State. The act of 1798 to reduce into one the acts subjecting lands to the payment of debts (Stat. Law 1463,) directs in its 8th section, that “in all sales of land under execution, the sheriff, or other officer, shall convey the same by deed indented, sealed and recorded, as the law directs for other conveyances of land,” &c. This provision was probably copied from some of the previous acts referred to in the title, and the word indented may have been inadvertently inserted without reference to its having been dispensed with in ordinary conveyances. But however this may be, it is obvious that the Legislature intended by this provision to require no other form in the execution of a sheriff’s deed, than the law directs for other con *35 veyances of land. And as the law does not and did not at the date of this statute, direct dr require an ordinary conveyance to be indented, we are of opinion that the sheriff's deed if good in other respects, is not vitiated by the omission of the useless and purely formal act of indenting it. We know too, that in this respect the deeds of sheriff's have for many years conformed to the ordinary modes of conveyance, and that much litigation and confusion and loss would ensue from a decision that sueh deeds are ineffectual if not actually indented. And we feel authorized and bound to give greater effect to that part of the statutory direction which refers to the ordinary laws of conveyancing, than to the particular word indented, which is repugnant to the more important part of the provision.
Facts admitted on the trial of this case, on the last trial not appearing on the former record bo fore this Court.
It appeared upon the last trial, that Richard Ratcliff had actually paid to his father the three hundred dollars named in the deed as the consideration of the land, and also $150, for the negro man referred to in the former opinion, and that these sums were paid by the grantor to his creditors. These facts were admitted for the purpose of avoiding a continuance moved for, on account of the absence of a witness who it was stated would prove them. But the admission was used on. the trial, and of course removed any inference or question as to the non-payment of the consideration.
Upon the assumption made in the former opinion, and fully authorized by the evidence on the first trial, that the property conveyed was worth at least $2000, the payment of the small consideration of $300, and its appropriation to the debts of the grantor, might have been entitled to little influence in rebutting the inference of fraud arising from other circumstances then and now appearing in the case. But while it may still be assumed that the land itself was worth $2000, or more, several witnesses deposed on the last trial, that encumbered as the land was with lawsuits, and a judgment in ejectment, it was worth but little, and not more than three hundred dollars. There was no such evi *36 dence on the former trial. And the reasoning and con-elusions of the former opinion, apply to a case in which the inadequacy of price was gross and palpable. If, at the time of the conveyance now in question,' the land was so encumbered by suits and judgment, as .that, in common estimation, the title and interest of the grant- or was regarded as worth no more than three or four hundred dollars, or that it might have been fairly considered by S. Ratcliff and his son as of no greater value» the conveyance to the son, at the price of three hundred dollars, actually paid to the grantor, and by him appropriated to the payment of his own debts, would, so far as these circumstances are concerned, be subject to but slight, if any, inference of fraud — even though there was no visible ohange of the possession of the land, and the grantor still derived his support from it.
It seems that the one hundred acres ofland embraced in this deed, being included in a patent to John Graham, was by him sold and conveyed to S. Ratcliff about the year 1814, by deed, with, a covenant to refund the price of three hundred dollars in case of loss, &c. And that the same land being also included in two adjoining older patents to J. Madison a separate action was brought about the year 1815, upon each of these patents, against Ratcliff and others — that in the action under the patent for 1850 acres, the plaintiff being unable to make out a title derived from the patentee, a verdict and judgment were rendered for the defendants, and in the other action on the patent for 1300 acres, a judgment was con-, fessed by one óf the tenants, who was made defendant-for all. No further action seems to have been brought upon the first named patent. And the possession of Ratcliff having continued till 1835, under the junior patent, his right of possession was then probably perfected by time against the patent for 1850 acres. The judgment above mentioned was enjoined, and in 1830, Graham became a surety in an injunction bond, on which the judgment was afterwards obtained against his executors, the, payment of which was the founda- *37 tlon' of their judgment against S. Ratcliff. This injunction was pending until some years after the date of the deed now in question. And in 1840, after Us dissolution, the party who claimed the benefit of the judgment in ejectment, turned the Ratcliff’s out of the entire possession, of the 100 acres of land by virtue of a writ of haberi facias issued on the judgment, which he seems to have considered as covering the whole, and indeed other land, of',which he also took possession, without regard to its being within the 1300 acre patent or not. The parties thus turned out of possession, brought writs of forcible entry, &c., five in number, and also áctions of trespass, in one of which Silas Rat-cliff was sole plaintiff, and a restitution was awarded of all the land outside of the 1300 acre patent. In addition to which, there seems to have been a compro-mise of all the actions, by which Richard Ratcliff and several others were to pay the opposite party $400, and thus, as we understand it, regained a possession more extensive than was awarded by the judgment of restitution, but did not obtain the adverse title. And it is proved that Richard Ratcliff paid $50 on aceount of this compromise.
Where a convey-^ anee is assailed on the ground of' fraud, the Court in its instructions to the jury shouid hypothe-cate its instructions upon all— not a part of the facts adduced to seow fraud or no fraud in the tran suction.
It will be seen from this statement that the greater-part of this litigation occurred long after the conveyance from Silas to Richard Ratcliff, and the witnesses do not distinctly refer to the previous litigation as then reducing the value of the land or title to about $300. There was, however, a judgment pending, which, as we understand, covered some portion, not precisely ascertained in this record, of the 100 acres in contest. This fact, and the uncertainty as to the extent of the judgment, or the idea that it covered the entire 100 acres, and that the judgment and the injunction suit involved the whole, may have operated to diminish the estimated value of S. Ratcliff’s title or interest in the transaction with is son. And under the evidence referred to, and other evidence in the case, it was for the jury to determine whether, and how far it did so oper-. *38 ate. And we are not prepared to say that the jury might not have found, that under all the circumstances, the consideration of $300 was reasonably adequate for the interest of S. Ratcliff, and might have been so considered by the parties at the date of the deed, though they were also authorized to find that tjie $300 was a grossly inadequate consideration. Under this view of .the casé, the Court could not properly direct the jury to find the deed fraudulent and void, upon their belief of certain facts tending to prove fraud—unless the gross inadequacy of the consideration was submitted as one of the facts to be believed from the evidence. And as this fact is omited in the third, and fourth instructions given for the plaintiff—each of which concludes that the deed is fraudulent, without reference to the fairness or gross inadequacy of the consideration, or including other facts which would be- conclusive evidence of fraud, each of them is deemed erroneous. The second instruction for the-plaintiff submits the inquiry as to the inadequacy of the consideration, using the word greatly instead of grossly inadequate. And although we might not reverse the judgment on this ground, we are of opinion that the consideration should have been grossly inadequate, in'order to make the inadequacy of the consideration with the other facts enumerated in the second instruction, conclusive evidence of fraud in the deed.
When the consideration of a conveyance is fully adequate, the irandulent in tent of the giant or in malting the conveyance will not affect its validity, rmlesslhe grantee participated in that intent. •
We are also of opinion that if the consideration paid, was fairly adequate to the value of the interest sold and conveyed by the deed, as understood at the time, the fraudulent intent of the grantor, if it existed, would not affect the validity of the deed unless the grantee participated in that intent. And the Court should have so instructed the jury as substantially asked to do by the defendants. We are not satisfied that the evidence authorized the jury to find that S. Ratcliff was induced to enjoin the judgment in ejectment bya promise of John Graham to save him from costs. But if it did, the injunction bond and the judgment on it, was for rents,, &c., as well as for the costs of the injunction suit._ And *39 the fact that costs, certainly not exceeding $200, named in the declaration, were included in the judgment against Graham’s executors for $1300, even if that was not the ground of the credit on their judgment against S. Ratcliff, could not have any bearing on the question of fraud, or on the right of recovery in this case. And there was ño error in refusing the instruction as asked for by the defendant on that subject.
Hazlerigg and Daniel for appellant; Apperson for appellee.
The jury would not have been authorized by the evidence in this case to find that at the date of the deed in question, S. Ratcliff had property exclusive of the land conveyed, to have paid all his liabilities due and impending, and the instruction based upon that fact was properly overruled
The other instructions asked for by the defendants, and refused by the Court, were either abstract or misleading, and erroneous in principle as applied to this case, and were properly overruled. The reasons for this conclusion as to most of these instructions, are shown in the former opinion, and in thé opinion in the case of Kendall vs Hughes, (7. B. Monroe,) and need .not be repeated. There was no evidence of R. Ratcliff being possessed under adverse title. As the judgment must be reversed and the cause remanded for the error of giving the third and fourth instructions for the plaintiff, we have not thought it necessary, to consider the question as to the propriety of overruling the motion for a continuance. And we remark, that there would be less danger of error on either side, if the parties would be content that the Court should instruct the ju; ry as to the definition of essence of fraud as against creditors, and its effect upon a conveyance, leaving the jury to weigh all the circumstances, unless there be some one or more, which make the deed per se fraudu-. lent.
Wherefore the judgment is reversed, and. the cause remanded for a new trial on principles consistent with this opinion.